

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-18-2004

# Parker v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4265

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Parker v. Atty Gen USA" (2004). *2004 Decisions.* Paper 131.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/131

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-4265

———

ONEIL ORLANDO PARKER,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES

———

On Petition for Review from the Board of Immigration Appeals
No. A95 521 657

———

Argued: November 12, 2004

Before: McKEE and CHERTOFF, *Circuit Judges,* and
BUCKWALTER,* *Senior District Judge.*

(Filed  November 18, 2004)

TIMOTHY R. BLOCK (Argued)
Legal Services of New Jersey
100 Metroplex Drive, Suite 402
Edison, NJ 08818

———

* Honorable Ronald Buckwalter, Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

*Counsel for Appellant*

PETER D. KEISLER, Assistant Attorney General, Civil Division
LINDA S. WENDTLAND, Assistant Director
EDWARD C. DURANT, Attorney
MATTHEW L. ZABEL, Attorney (Argued)
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

*Counsel for Appellee*

———

OPINION

———

Chertoff, *Circuit Judge.*

Petitioner, Oneil Orlando Parker, seeks review of a decision of the Board of Immigration Appeals rejecting his claim for asylum and withholding of removal on the ground of well-founded fear of persecution.

The relevant facts are these. Before the Immigration Judge ("IJ"), Parker maintained that as a gay man in Kingston, Jamaica, he was subjected to widespread hatred and some acts of violence by prejudiced individuals, and that the police were unable to control the violence or afford protection. The IJ found Parker's testimony to be credible. In particular, the IJ noted that (1) Parker's homosexual orientation was made public in an inflammatory newspaper article in 1999; (2) Parker was later threatened and

hit by members of a neighborhood gang; and (3) Parker's efforts to relocate elsewhere in the town of Kingston were unsatisfactory because he was recognized as a gay man. After his last effort to relocate came to naught in 2001, Parker fled to the United States. The IJ also observed, however, that some of the gang animus against Parker may stem from family disputes between Parker and the gang leader, and from the belief by gang members that Parker cooperated with police in a murder investigation.

Based on these findings, the IJ concluded that Parker was a member of a distinct social group – gay men – and that he was reasonably afraid of future threats and assaults. Most significant, the IJ determined that this was a well-founded fear of persecution because the police cannot control the gang that threatens him with violence, at least in part, because of his sexual orientation.

The Board of Immigration Appeals reversed. The Board did not take issue with the IJ's findings that Parker was credible; that he was a member of a social group that is the subject of widespread social prejudice; and that he had a reasonable basis to fear future harm as a result of this prejudice. Indeed, the Board agreed that there was a "pervasive animus towards homosexuals in Jamaica," and noted an Amensty International Report stating that police have ill-treated homosexuals. (App. 2). Nevertheless, the Board went on to hold that this does not "establish the government's inability to respond to persecutorial harm where motivated to do so" and, therefore, that Parker's application must fail because he did not "prove that the Jamaican government is

unwilling or unable to protect him from harm." (Id.).

We review the Board's decision under the substantial evidence test. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). The pivotal issue here is whether substantial evidence on this record supports the determination that Parker did not prove that Jamaican authorities are unwilling or unable to protect him.

The Board's assessment that the police can protect Parker was based on a letter from police detective Michael Garrick that was supplied by Parker himself. The letter in pertinent part states:

> This serves to inform you that I have known Oneil Parker of 18 Windward Road for the past six (6) months.
>
> Mr. Parker lives in a volatile area in which gun crimes are frequently committed.
>
> Sometime between May and June 2002, Parker's cousin James Brown was shot at resulting in the arrest of three persons. Since then there have been threats against the life of Brown and his relatives.
>
> The fact that Parker is close to Brown [sic] he has been threatened several times. It has reached the extent that he reported to me that he is in fear of sleeping in his community.
>
> In addition, people from the community is [sic] accusing him of being a homosexual and expressed that they do not want him in the community.
>
> The police is [sic] offering protection and have tried to get on top of the situation but Parker does not feel comfortable.
>
> I was informed by his relatives that he is in the United States of America seeking political asylum.
>
> I therefore forward you this information which I hope will assist with your investigation, please.

4

(App. 270).

The Board's reading of the letter is perhaps overly sanguine.  In fact, the letter is a mixed message.  On the one hand, it suggests that a good deal of Parker's problem stems from his involvement in a police investigation, rather than his homosexuality.  On the other hand, against that background, the letter appears to demonstrate only that individual police have tried unsuccessfully to help Parker, perhaps – as the Board acknowledged (App. 2) – because of his assistance in their investigation.  We do not see the letter as strongly probative of the authorities willingness or ability to curb threats against Parker.

There is considerable evidence that virulent prejudice against homosexuals exists in Jamaica.  Reports of Amnesty International – on which the Board relied – note two incidents of misbehavior against gays in police custody, one of which was a 1997 prison riot.  Amnesty International also described incidents in which police have failed to respond to "incidents of homophobic violence" (App. 213-14, 231).  An extensive news article in the Jamaica Gleaner in 2001 recounts that leaders of both major political parties found it advantageous to emphasize their strong personal distaste for homosexuals. (App. 222-23).  The record discloses a culture of anti-homosexual violence that is deeply ingrained, and reflected in popular songs that urge violence against gay men.  (App. 225-26).  And Parker himself related that he was involved in an altercation that police seemed not to take very seriously.

5

On the other hand, students who engaged in gay violence have faced expulsion (App. 233), and, as the 2002 Country Report indicates, the newly established Public Defender's office has "strongly criticized violence targeted against homosexuals." (App. 203). Also, various government agencies have begun programs designed to educate police to respect citizen's rights. (Id).

The question boils down to this: Was there substantial evidence that the government is not unable or unwilling to control violence against gays? Gao, 299 F.3d at 272. While the question is close, under our deferential standard of review we cannot conclude that the Board's conclusion was unreasonable. Although Jamaican society evidently takes a harsh view of homosexuality, there is some evidence – including Detective Garrick's letter – that officials recognize that violence against gays is unacceptable. We cannot say that the Board weighed this evidence unreasonably. Accordingly, we will affirm the decision and deny the petition for review.